Joseph F. ANCICH, Arnold T. Bewley, Pete N. Billen, Mike Blaskovich, Mike Cebra, Ray Ferrini, Robert Heli, Keith Keilman, A. W. Keune, Eugene Kish, Norman Kostoff, Joseph Kula, Ted Kunka, Bob Lamski, Joe Lescak, Tony J. Lopiccilo, Ray Macek, Anthony Matuga, C. A. Monestere, Michael J. O'Brien, John Patterson, Norbert Rosinski, Richard Ruthkowski, Donald E. Smith, Robert G. Smith, S. P. Susko, Sr., Eugene Toth, George Fischer, Tony Sladish, Appellants (Plaintiffs Below),

v.

MOBIL OIL CORPORATION, Appellee (Defendant Below).

No. 3–1279A333.

Court of Appeals of Indiana, Fourth District.

July 14, 1981.

Rehearing Denied August 21, 1981.

Lowell E. Enslen, Gary K. Matthews, McHie Enslen & Myers, Hammond, for appellants.

Joseph E. Costanza, Lester Murphy, Jr., Murphy McAtee Murphy & Costanza, East Chicago, Robert C. Fox, AMF O'Hare, Ill., for appellee.

YOUNG, Presiding Judge.

Plaintiffs-appellants (Mobil employees) appeal the grant of summary judgment in favor of defendant-appellee Mobil Oil Corporation on plaintiffs' complaint for damages which alleged that certain benefits provided by a "Termination Allowance Plan" (TAP) of Mobil Oil Corporation were wrongfully withheld from plaintiffs. Both parties moved for summary judgment; summary judgment was granted for defendant and plaintiffs now argue that genuine issues of material fact exist which preclude summary judgment.

■ Central to this case is construction of the Termination Allowance Plan (TAP). The construction of a written contract is generally a question of law for the trial court, summary judgment being particularly appropriate since there are no issues of fact. However, if reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate, it being

the responsibility of the trier of fact to ascertain the extrinsic facts necessary to interpret the contract. *Kleen Leen, Inc. v. Mylcraine,* (1977) Ind.App., 369 N.E.2d 638. If, on the other hand, the ambiguity arises, not because of extrinsic facts, but by reason of the language used, construction of the ambiguous contract is a question of law for the trial court. *Indiana Broadcasting Corp. v. Star Stations,* (1979) Ind.App., 388 N.E.2d 568, 572. Thus, whenever summary judgment is granted based upon the construction of a contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, *Kleen Leen, Inc., supra,* 369 N.E.2d at 641, or that the contract ambiguity, if it exists, can be resolved without the aid of factual determinations. *Indiana Broadcasting Corp., supra,* 388 N.E.2d at 572.

■ The plaintiffs argue that the contract is ambiguous, its proper interpretation being a question of fact to be determined only after hearing evidence whether the TAP plan was interpreted and applied by Mobil Corporation in the past, whether the plan was explained to Mobil employees and whether they relied on any particular interpretation of the plan. The plaintiffs, however, have failed to demonstrate, through affidavit or other supporting documents, that a genuine triable issue existed. Whether the TAP was interpreted in the past, whether it was explained to the Mobil employees and whether they relied upon such explanation were facts never placed in issue before the trial court.

In its answer to the plaintiffs' complaint, the defendant admitted the existence of the TAP and the plaintiffs' entitlement to benefits thereunder. The only issue which remained was a question of law—the interpretation of the TAP. The defendant supported its motion for summary judgment with an affidavit explaining how the disputed benefits were computed and a memorandum of law in which it argued the contract when read as a whole was unambiguous. It thereby sustained its burden of showing that the TAP was not ambiguous and that the computation of benefits was correct. The plaintiffs failed to respond to the summary judgment motion of defendants relying instead on their pleadings. Of course, the failure of the plaintiffs to respond did not automatically entitle the defendant to a summary judgment. *Smith v. P. & B. Corp.,* (1979) Ind.App., 386 N.E.2d 1232, 1234. Nonetheless, they ran the risk of suffering an adverse ruling by their failure to defend affirmatively against the defendant's motion. *Bassett v. Glock,* (1977) Ind.App., 368 N.E.2d 18, 23.

While the burden was upon defendant Mobil Oil Corp. to establish that no material facts were in genuine issue, all doubts and fair inferences being resolved in favor of the plaintiffs, *Bassett, supra,* 368 N.E.2d at 23, once the defendant, by the materials filed, established the lack of a genuine issue of material fact, it was incumbent upon the plaintiffs, in compliance with Ind.Rules of Procedure, Trial Rule 56(E), to show the existence of a genuine issue for trial. This the plaintiffs failed to do. Even accepting the plaintiffs' argument that prior interpretations of the plan, reliance, etc. were material facts bearing upon proper constructing of an ambiguous plan, the plaintiffs presented no evidence for which the trial court could have reasonably inferred that these facts were in genuine issue.[1] That there *might* have been prior interpretations of the plan or reliance by the Mobil employees on an interpretation of the plan is mere speculation and conjecture. The trial court

---

1. Indeed, on page 24 of their appellate brief, the plaintiffs admit that no evidence to place these facts in issue was presented to the trial court. The plaintiffs seem to be arguing that as a matter of law the plan could not be interpreted without a determination of these facts even though no evidence was presented on these facts. They cite *A. M. Alfaro v. Stauffer Chemical Co.,* (1977) 173 Ind.App. 89, 362 N.E.2d 500 for the proposition that the possible reliance of the plaintiffs on an interpretation of the plan is an essential factor in its construction. *A. M. Alfaro,* however, merely recognized the relevance of reliance in determining whether a severance pay contract had in fact been created. Because the contract here is not ambiguous, (any ambiguity in the language of the disputed *clause* being dispelled by reading the *contract* as a whole), the existence of these facts is unnecessary to interpret the contract.

was faced with a situation in which no genuine issues of material fact had been shown to exist. Consequently, the plaintiffs are now barred from challenging the judgment on the ground there is a genuine issue of material fact. We therefore turn to the next dimension of review, whether the trial court properly construed the TAP.

The dispute between the plaintiffs and the defendant concerns the construction of Article IV, Section 2, Subsection (a) of the TAP. That clause provides that:

"The following deductions shall be made from each payment of termination allowance otherwise provided in Section 1(a) of this Article IV:

(a) The amount of total maximum benefit which an *unemployed person, considered as a single person without dependents*, is eligible to receive pursuant to any applicable employer-corporation or government plan or program which grants benefits for unemployment, and

(b) The amount of any benefit or payment of the kind generally known as workmen's compensation which *the employee* is eligible to receive for an accident or injury sustained in the course of employment by an employer-corporation when termination of employment was under such circumstances that employee or any dependent or beneficiary is eligible to receive such benefit or payment." (Emphasis added).

Applying subsection (a), the defendant deducted $1,560.00 from the allowance paid to each terminated worker. That sum was computed by determining the maximum amount an unemployed person considered as a single person without dependents is eligible to receive under Indiana unemployment compensation law. The defendant argued and the trial court found that subsection (a) authorizes a uniform deduction from each payment of termination allowance without regard to the *individual employee's* eligibility *for or* entitlement *to* state unemployment compensation. The trial court made these findings:

1. The Court finds that there remains no genuine issue as to any material fact.

2. Article IV, Section 2, Subsection B [sic] of the Termination Allowance Plan is a formula to be used with regard to each terminated employee and bears no relationship to such employee's actual rights under any employment benefit arrangement. Rather it is merely an actuarial method of providing a reduction leading to net termination benefits.

3. That the defendant has properly interpreted the Plan as it affects the plaintiffs in this cause.

4. Whether or not the plaintiffs or any of them were entitled or eligible to receive unemployment benefits in each particular case is not relevant to the case at bar.

5. That the defendant is entitled to judgment as a matter of law and therefore its Motion For Summary Judgment should be sustained.

■ The plaintiffs argue the trial court erroneously construed subsection (a). They argue subsection (a) authorizes a reduction in the termination allowance the terminated employee would otherwise receive under the plan *only if* the employee is actually receiving unemployment compensation or is in fact eligible to receive such compensation. To resolve this issue of contract meaning, we examine the contract as a whole. *Fort Wayne Bank Building, Inc. v. Bank Building & Equipment Corp.*, (1974) 160 Ind.App. 26, 309 N.E.2d 464. Ambiguity in the meaning of subsection (a) is created only by an isolated focus upon the language used in subsection (a). The ambiguity is resolved by reading subsection (a) in context with the other contract sections. When the TAP is read as a whole, the meaning of § 2(a) crystallizes. Therefore, even though some uncertainty exists in § 2(a) when read alone, the *contract* is not ambiguous, its meaning is ascertained from a consideration of all its provisions. *Evansville-Vanderburgh School Corp. v. Moll*, (1976) 264 Ind. 356, 344 N.E.2d 831, 837.

The words "an unemployed person" are used only in § 2(a). The other contract sections use the words "the employee," "the eligible employee," or "the regular employ-

ee." The isolated use of the words "an unemployed person" in § 2(a), when contrasted with the repeated use of the words "the employee" throughout the rest of the TAP, indicates the parties' intention in § 2(a) to provide for a standard and uniform deduction to be made in each termination allowance. Whereas the terms "the employee", "the eligible employee", etc. refer to the particular individual seeking termination benefits, the term "an unemployed person" refers to a hypothetical person, and is used in computing a deduction in benefits made in each allowance regardless of the specific employee's right to unemployment compensation.

This distinction is placed in greatest relief by comparing §§ 2(a) and (b). As discussed above, subsection (a) authorizes the deduction from each termination allowance of "[t]he amount of total maximum benefit which an *unemployed person,* considered as a single person without dependents, is eligible to receive pursuant to any applicable ..." unemployment plan. Subsection (b) authorizes deduction of "[t]he amount of any benefit or payment ... generally known as workmen's compensation which *the employee* is eligible to receive ...." Subsection (b) authorizes a deduction only if "the employee" is eligible to receive the benefits described therein; only if the employee is actually receiving or entitled to receive workmen's compensation benefits will his termination allowance be diminished. Subsection (a), on the other hand, authorizes a deduction from each termination allowance, and establishes the formula to compute the deduction—"the total amount an unemployed single person is eligible to receive ...." The deduction authorized bears no relationship to the individual employee's actual rights to unemployment compensation. Therefore, the trial court was correct in finding that subsection (a) creates a "method of providing a reduction leading to net termination benefits," a formula in which the individual employee's right to benefits is irrelevant. There being no contract ambiguity requiring resolution of extrinsic facts, the trial court correctly construed § 2(a) reading the contract as a whole.

■ The plaintiffs also argue the trial court erred in finding that the defendant had properly interpreted the TAP as it affected the plaintiffs. Specifically, they argue there is no evidence to support the defendant's application of Indiana unemployment law in reaching the $1,560.00 deduction figure. Subsection (a) states that the deduction shall be made in "the amount of ... benefit ... an unemployed person ... is entitled to receive *pursuant to any applicable employer-corporation or government plan or program which grants benefits for unemployment.*" This clause is not ambiguous. The plaintiffs were employees at the defendant's East Chicago plant, an employing unit subject to the Indiana Unemployment Act. Therefore, the Indiana Unemployment Compensation Act was the applicable government plan. We find no error in the application of Indiana unemployment law.

■ The plaintiffs also argue there is no evidence to explain how the $1,560.00 figure was computed. The defendant, by affidavit, explained that the deduction was based upon a determination of the maximum amount which an unemployed person without dependents would be eligible to receive pursuant to Indiana unemployment law. At the summary judgment hearing, the plaintiffs did not challenge or even question the calculation, they cannot now claim a genuine factual issue exists regarding the correctness of the $1,560.00 figure.

■ Finally, the plaintiffs argue the trial court erred in adopting the defendant's interpretation of the plan without finding that it was entitled to interpret the plan and that its interpretation was reasonable. The plan contained the following provision:

"The Plan shall be governed by and construed in accordance with the laws of the State of New York. Any interpretation of the Plan by general counsel of the company shall be conclusive as between the employer-corporation and its regular and terminated employees and may be relied upon by all parties in interest."

An interpretation of Section 2(a) was sought and obtained by the plaintiffs from the General Counsel for Mobil Oil Corporation. The plaintiffs argue that the provision making the defendant's interpretation conclusive is invalid because it reserves unlimited, unilateral discretion which could result in an unreasonable, unfair or unjust construction of the plan. However, the trial court's summary judgment award is not dependent upon this provision. It was not required to find this provision valid because it did not rely upon this provision, it rested its decision upon the language of § 2(a) and the contract as a whole. There is no error in the trial court's failing to make findings regarding this provision.

The plaintiffs also argue error in the trial court's failure to make specific reference to the law of New York in its findings. The plaintiffs, however, cite no authority to suggest that the case law or authority used must be set forth in the trial court's findings. Moreover, they do not cite any New York law indicating the trial court's findings are erroneous or New York law was not applied. Additionally, they have not supported the legal arguments made to either the trial court or this court with New York case law. Instead, they rely upon Indiana case law both for their procedural and substantive arguments. We therefore conclude they have waived the right both to have New York law applied and to claim error if it was not applied.

Affirmed.

CHIPMAN and MILLER, JJ., concur.