**MIDWESTERN INDEMNITY COMPA-NY, Appellant (Plaintiff Below),**

v.

**LEFFLER CONSTRUCTION COMPANY, INC., American Building Company and Design Consultants, Inc., Appellees (Defendants Below).**

No. 2–882A256.

Court of Appeals of Indiana, Second District.

May 30, 1984.

Phillip E. Stephenson, Marion, for appellant.

Denise Page, Rick D. Meils, Indianapolis, for appellee, Leffler Const. Co.

Donald R. Metz, Wabash, for appellee, Design Consultants, Inc.

G. Ronald Heath, Robert C. Wolf, Indianapolis, for appellee, American Bldgs. Co.

SHIELDS, Judge.

Midwestern Indemnity Company (Midwestern) appeals the trial court's grant of summary judgment in favor of Leffler Construction Company (Leffler), American Buildings Company (American) and Design Consultants, Inc. (Design) (hereinafter collectively referred to as Builders). Because this matter is before the court as an appeal from a summary judgment we must determine whether there was a genuine issue of material fact and whether the law was correctly applied. *Perry v. Northern Indiana Public Service*, (1982) Ind.App., 433 N.E.2d 44.

We reverse.

This litigation arose from the partial collapse of a warehouse constructed for Frank Maidenberg and Nanette Maidenberg, d/b/a Warehouse City (Owners). The building was constructed by Leffler using a building package provided by American. A lean-to was attached using materials provided by Leffler and American. Certain modifications were designed by Design on behalf of Leffler. The building was completed in October 1977 and occupied as a warehouse facility until the collapse of part of the roof in February 1978. Midwestern was the insurer of the Owners at the time of the collapse and made payment for repairs and personal property damage. Midwestern thereafter brought suit against the Builders alleging a right of subrogation. The complaint alleged negligent design and construction and breach of warranties by improper design and construction.

Leffler filed a motion for summary judgment alleging the lack of a genuine issue of material fact, claiming it was entitled to judgment on the basis of the terms of the construction contract between Leffler and Owners. Design and American thereafter filed motions for summary judgment on the same ground as Leffler. After a hearing, the trial court entered its findings of fact and conclusions of law.

### FINDINGS OF FACT

"1. That [Owners] contracted with Leffler Construction Company for construction of a warehouse by written agreement.

2. That such agreement contained the following clause: 'Owner to carry fire, tornado and other necessary insurance.'

3. That such warehouse was completed in October 1979 [sic].[1]

4. That part of the building collapsed about four (4) months later.

5. That the cost of repair was Forty Thousand Seven Hundred Nineteen Dollars and Six Cents ($40,719.06).

6. That Thirty-five Thousand Seven Hundred Eleven Dollars and Six Cents ($35,711.06) was paid by [Midwestern] to [Owners], as a result of the collapse of such building.

7. That the loss was paid under policy of Builders Risk Insurance.

---

1. The warehouse was completed in October 1977.

8. That [American and Design were subcontractors] of [Leffler] and that the construction contract provision regarding insurance, inures to the benefit of such subcontractor[s] under principle [sic] defendant _____. [sic]"

### CONCLUSIONS OF LAW

"1. That an agreement to provide insurance is an agreement to provide the parties with the benefits of such insurance which will protect them against the consequences of their own negligence.

2. That such agreement limits the party acquiring the policy to its proceeds.

3. That [Leffler] or [American and Design], even though negligent, would not be subject to subrogation claim by [Midwestern] for proceeds paid to [Owners]."

"The Court therefore, grants summary judgment to Defendants and against Plaintiff."

Record at 461–462.

We are faced with the question of whether Owners' agreement to provide "fire, tornado and other necessary insurance" constitutes an agreement precluding Owners' subrogee (Midwestern) from recovering its loss from Builders, assuming the loss resulted from Builders' negligent design and/or construction or breach of warranties by improper design and construction and knowing the loss occurred after the building was completed and owners were in possession.

■ Builders are correct in their assertion an agreement to provide insurance constitutes an agreement to limit the recourse of the parties to the agreement to its proceeds even though the loss may be caused by one party's negligence. *South Tippecanoe School Building Corp. v. Shambaugh & Son,* (1979) Ind.App., 395 N.E.2d 320; *Morches Lumber, Inc. v. Probst,* (1979) 180 Ind.App. 202, 388 N.E.2d 284. Both *South Tippecanoe* and *Morches* involved an agreement between the owner and contractor to procure insurance for damages occurring as the result of specified risks that in fact occurred *during* construction.

Thus, the *South Tippecanoe* and *Morches* cases are distinguishable from the case before us because they do not involve a dispute as to whether the parties agreed to insure the realized risk, but rather involve the effect and consequences of the agreement to insure. Also, unlike the instant case, in *South Tippecanoe* and *Morches* the loss from the realized risk occurred during construction.

These factual distinctions are important to the resolution of this appeal. The holdings of *Morches* and *South Tippecanoe* are that an agreement to insure against a realized risk is an agreement to provide both parties with the benefits of insurance. An underlying assumption is:

"Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a party to a contract agrees as part of his or its duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts). If that were not their intent, each would provide his or its own insurance protection and there would be no need for the contract to place the duty on one of them."

388 N.E.2d at 287. However, the foregoing assumption is valid only if the agreement to insure includes the risk which results in the loss and at the time the loss occurs, i.e., there is a meeting of the minds on the risks against which the parties are to be insured and the period of time the parties are to be so insured. Therefore, to affirm the trial court's grant of summary judgment the insurance clause of the agreement between Owners and Builders must include coverage of the realized risk at the time of the loss.

Because the posture of this case is an appeal from a summary judgment, we affirm only if there is not a genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

Ind.Rules of Procedure, Trial Rule 56(C). Evidence, pleadings, and inferences must be viewed in a light most favorable to the party against whom summary judgment is sought (Midwestern), and the burden is on the proponent (Builders) to show that no material issue of fact exists. If there is any doubt as to the existence of a genuine issue of material fact, such doubt must be resolved against the party moving for summary judgment (Builders). *South Tippecanoe School Building Corp. v. Shambaugh & Son,* (1979), Ind.App., 395 N.E.2d 320, 325.

▇▇▇▇ This resolution of this appeal involves the application of established principles of contract construction and interpretation. The construction of a written contract is generally a question of law for the trial court, not a question of fact. *Kleen Leen, Inc. v. Mylcraine,* (1977), 174 Ind. App. 579, 369 N.E.2d 638. *See also Indiana Industries, Inc. v. Wedge Products,* (1982) Ind.App., 430 N.E.2d 419 (if there is no ambiguity in terms of contract, then construction of those terms is a matter of law). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the *facts* necessary to construe the contract. *R.R. Donnelley & Sons, Co. v. Henry-Williams, Inc.* (1981) Ind.App., 422 N.E.2d 353; *Kleen Leen, Inc. v. Mylcraine.* A contract is ambiguous when reasonable persons would find its terms subject to more than one interpretation. *Fort Wayne Cablevision v. Indiana & Michigan Electric,* (1983) Ind.App. 443 N.E.2d 863; *Ethyl Corp. v. Forcum-Lannom Associates,* (1982) Ind.App., 433 N.E.2d 1214; *Indiana Industries.*

Thus, whenever summary judgment is granted based upon the construction of a contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, *Ancich v. Mobil Oil Corp.,* (1981) Ind.App., 422 N.E.2d 1320; *Kleen Leen, Inc. v. Mylcraine,* or that the contract ambiguity, if one exists, can be resolved without the aid of factual determinations. *Ancich; Indiana Broadcasting Corp. v. Star Stations,* (1979) 180 Ind.App. 207, 388 N.E.2d 568.

In the instant case, the trial court's finding number seven (7) is that the loss was paid under a builder's risk policy. Therefore, implicitly, the trial court interpreted the contract phrase, "other necessary insurance," to mean Owners were required to procure builder's risk insurance [2] which provided coverage for the loss at the time it occurred.

However, the trial court's finding number seven (7) is clearly erroneous. The record before the trial court in ruling on the motion for summary judgment reveals Midwestern made payment to Owners under a standard comprehensive liability policy issued February 15, 1978, six months after the warehouse was completed.

▇▇▇▇ Therefore, the question remains whether the parties' agreement as a matter of law requires coverage of the loss at the time it occurred, or, alternatively, requires factual determinations inappropriate to a summary judgment motion because essential facts are disputed. Here, the latter situation exists because the risks the parties intended to include within the builder's risk policy and the duration of the coverage are not ascertainable from within the four corners of the agreement.[3] Even assuming the trial court correctly concluded there

**2.** Indeed, the intent to require a builder's risk policy of insurance for some duration cannot be strongly disputed by the parties because Owners in fact procured a builder's risk policy and Leffler testified:

"Q. And I guess my question is what does other necessary insurance refer to as your understanding of that agreement? Are we talking about Builder's Risk insurance or are we talking about what?

A. Yes, it would be Builder's Risk in case my men did something to create a damage.
Q. During construction?
A. Yes.
Q. But, again, you did not to your knowledge discuss with Mr. Maidenberg as to what 'other necessary insurance' included?
A. No."
Record at 452–453.

**3.** The body of the agreement in issue reads:

was not a genuine issue of material fact as to the parties' intent to require builder's risk coverage at the time of the loss, reversal is required because builder's risk insurance is not an unvarying policy either as to coverage or duration. To the contrary, our research reveals builder's risk policies may vary both as to coverage and duration depending upon the specific agreement between the parties. *See generally* Annot., 97 A.L.R.3d 1270 (1980).

Because we conclude there are genuine issues of material fact, the judgment is reversed and the cause remanded for further proceedings.

BUCHANAN, C.J., and SULLIVAN, J., concur.

"We hereby submit specifications and estimates for:

Labor and materials to erect preengineered metal warehouse building per attached specifications......

As time is of essence, it is agreed the building will be ready for storing materials at east end within 45 days after signing agreement and balance ready for storage in eleven more days, subject only to obtaining permits, material delivery and acts of God.

We hereby propose to furnish labor and materials—complete in accordance with the above specifications, for the sum of ONE HUNDRED SEVENTY-NINE THOUSAND NINE HUNDRED dollars ($179,900.00) with payment to be made as follows: $5,000.00 at time of signing agreement—$100,000.00 on delivery of steel package—Balance on completion of work.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifics and involving extra costs, will be executed only upon written orders and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owners to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance."

Record at 460.