Robert E. CREIGHTON and Maxine E. Creighton, Appellants (Plaintiffs),

v.

CAYLOR-NICKEL HOSPITAL, INC., Appellee (Defendant).

No. 2–1184–A–355.

Court of Appeals of Indiana, Second District.

Nov. 13, 1985.

Sherrill Wm. Colvin, John O. Feighner, Snouffer, Haller and Colvin, Fort Wayne, for appellants (plaintiffs).

James R. Fisher, Robert B. Clemens, Ice, Miller, Donadio and Ryan, Indianapolis, for appellee (defendant).

BUCHANAN, Chief Judge.

### CASE SUMMARY

Plaintiff-appellants, Robert and Maxine Creighton [hereinafter collectively referred to as the Creightons], appeal the trial court's entry of summary judgment in favor of the defendant-appellee, Caylor-Nickel Hospital, Inc. (Hospital), in the Creightons' action under the Indiana Medical Malpractice Act, Ind.Code 16–9.5–1–1 to 16–9.-5–10–5 (1982), claiming, that under Ind. Rules of Procedure, Trial Rule 15(C) their amended proposed complaint related back to the date of the filing of their original proposed complaint and, as a matter of law, precluded the entry of summary judgment in favor of the Hospital on its statute of limitations defense.

We reverse.

### FACTS

On February 24, 1978, while a patient in the Caylor-Nickel Hospital, Bluffton, Indiana, Robert was injured when he fell in a shower/tub unit. The Hospital is one of three facilities bearing the Caylor-Nickel title; the other two are the Caylor-Nickel Research Institute and the Caylor-Nickel Clinic (Clinic). While all three are located within close proximity to one another and, in fact, the Clinic occupies a portion of the Hospital's building pursuant to a lease arrangement, each facility is a separate legal entity. In response to inquiries by Robert's attorney, the Indiana Patient's Compensation Authority (Authority), a division of the Indiana Department of Insurance, informed the attorney, by letter dated March 9, 1979, that the "Caylor-Nickel Clinic (Hospital)" had paid the necessary surcharge and had filed a certificate of insurance with the Authority for the period in which Robert was injured. Thereafter, on February 19, 1980, five days before the statute of limitations would have run on the malpractice claim, *see* IC 16–9.5–3–1, the Creightons filed a proposed complaint for medical malpractice with the Authority in which they named the Clinic, but not the Hospital, as a defendant. Pursuant to IC

16–9.5–9–1, the Commissioner of Insurance (Commissioner) forwarded a copy of this proposed complaint to the Caylor-Nickel Clinic on February 22, 1980, two days before the statute of limitations would have run on Creighton's claim. This proposed complaint was received by the Clinic's risk manager, Cecil Lockwood, Jr. (Lockwood), on February 28, 1980. On the same day, Lockwood forwarded relevant information to the Clinic's insurer and stated in his cover letter:

"We are sure, also, that it is not necessary to call your attention to the fact that the fall which resulted in the *suit* against Caylor-Nickel Clinic occurred on the premises owned and operated by Caylor-Nickel Hospital, Inc., and in an area of the building for which the Caylor-Nickel Clinic has no responsibility whatsoever."

*Record* at 151. Lockwood was familiar with the facts of Robert's fall because he was also employed by the Hospital as its risk manager on an independent contractor basis and had investigated the circumstances of the fall in that capacity shortly after the incident.

On February 29, 1980, the Department of Insurance reported to the Creightons' attorney that the Authority had provided erroneous information concerning the registration of the Clinic with the Authority. This letter informed the Creightons' attorney that the Hospital was registered while the Clinic was not and that the confusion resulted from the erroneous assumption that the three separate Caylor-Nickel facilities were all one and the same. *Record* at 140. Upon receiving this information, the Creightons' attorney mailed an amended proposed complaint to the Authority in which it named the Hospital as a defendant for the first time. While the amended complaint was actually received by the Authority on March 3, 1980, eight days after the statute of limitations would have expired on the claim, it was stamped as having been filed on February 19, 1980, the date the original complaint was first filed. This was consistent with the Authority's administrative practices at that time which have

since been discontinued. The Authority then forwarded a copy of the amended complaint to the Hospital. The amended complaint was received by Lockwood in his capacity as risk manager for the Hospital.

Pursuant to the procedures of the Medical Malpractice Act, the Creightons' personal injury claim was reviewed by a medical review panel. The panel determined that there was a fact issue which did not require expert opinion. Following this decision, the Creightons timely filed a complaint for damages against the Hospital in the Wells Circuit Court, and on February 17, 1982, the Hospital filed its answer to the Creightons' complaint without raising any affirmative defenses. The case was later venued to the Huntington Circuit Court. More than a year later, on May 18, 1983, and approximately three weeks prior to the date the case was scheduled to be tried before a jury, the Hospital sought leave to amend its answer to include the affirmative defense that the Creightons had not filed an action against the Hospital within two years of the date of Robert's injuries and, therefore, the Creightons' action was barred by the statute of limitations. The trial judge granted the Hospital leave to amend its answer, vacated the jury trial setting, and permitted the Hospital to file a motion for summary judgment based on the statute of limitations defense. A hearing was held, and the trial court granted the Hospital's motion for summary judgment.

## ISSUE

As we reverse, we need address only one issue raised by the Creightons' appeal:

Whether the Hospital was entitled to summary judgment on its statute of limitations defense as a matter of law?

## DECISION

PARTIES' CONTENTIONS—The Creightons contend that the Hospital received sufficient notice of the claim against it to allow their amended complaint to relate back to the date their original complaint

was timely filed. Therefore, they argue, their claim was not subject to the Hospital's statute of limitations defense.

The Hospital responds that T.R. 15(C) allows relation back only if the defendant to be brought in by the amendment has received actual notice of the claim within the statute of limitations. The Hospital asserts that it received no notice of the claim until after the limitations period had expired and that it is, therefore, entitled to summary judgment.

CONCLUSION—The Hospital received sufficient notice to allow relation back under T.R. 15(C), and, consequently, the Hospital was not entitled to summary judgment on its statute of limitations defense.

 We repeat the litany of rules surrounding summary judgment. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C). *See also Barnes v. Wilson* (1983), Ind.App., 450 N.E.2d 1030; *Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000. A factual issue is genuine if it cannot be completely resolved after examination of the undisputed facts. *Powell v. Dawson* (1984), Ind.App., 469 N.E.2d 1179. Even if the facts are undisputed, summary judgment is inappropriate if different inferences can be drawn from those undisputed facts. *Colbert, supra; Carrow v. Streeter* (1980), Ind.App., 410 N.E.2d 1369; *Adams v. Luros* (1980), Ind.App., 406 N.E.2d 1199. Initially, the burden lies with the movant to establish that no genuine issues of material fact exist. *Powell, supra; Adams, supra.* However, in a summary judgment proceeding in which the movant raises an affirmative defense based on a statute of limitations, he need only make a prima facie showing that the cause of action was commenced beyond the statutory period. *Conrad v. Waugh* (1985), Ind.App., 474 N.E.2d 130. The burden then falls on the opponent of the motion to establish "the existence of material facts *in avoidance* of the statute of limitations defense...." *Id.* at 134.

Here, the Hospital made a prima facie showing that the amended proposed complaint specifically naming the Hospital as a defendant was not filed within the statutory period. Nevertheless, the Creightons sought to avoid the statute of limitations defense by invoking the relation back doctrine of T.R. 15(C) so that the amended complaint would relate back to and be deemed filed on the day the original proposed complaint was filed, which was before the statute of limitations expired.

T.R. 15(C) states:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment:

(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him."

 It is undisputed that the claim asserted in the Creightons' amended complaint arose out of the same occurrence set forth in the timely filed original complaint. Consequently, the first condition of T.R. 15(C) is met. It is also undisputed that the Hospital actually received formal notice of the action instituted by the original complaint when Lockwood, the risk manager for both the Hospital and the Clinic, received a copy of the original complaint four days after the statute of limitations would have run. Upon his receipt of the original

complaint, Lockwood wrote to the Clinic's insurer to advise it of the claim. His letter conclusively establishes that, through him, the Hospital had actual knowledge that, but for the mistake in naming the Clinic instead of the Hospital, the action would have been timely brought against the Hospital. Thus, the last stated condition of T.R. 15(C) is also satisfied. Consequently, we need to decide only whether the Hospital's actual receipt of notice four days after the statute of limitations would have run satisfies the notice requirement of T.R. 15(C); that is, whether this minor delay in the receipt of actual notice precluded relation back of the amended complaint.

■ In our view, this case presents precisely the type of factual context in which T.R. 15(C) was designed to come into play to prevent an inadvertent and unfair result. The Creightons' confusion and mistake in determining the correct defendant's proper name was understandable in this case. The Hospital and the Clinic are separate legal entities. Nevertheless, they have more in common than just the same risk manager and the Caylor-Nickel name; they also share the same building and the same medical record forms. For example, Robert's laboratory results were reported on a form labeled "Laboratory Reports Caylor-Nickel Clinic Hospital, Inc.", *record* at 153 (deposition of William Brockmann, Hospital Administrator, plaintiff's deposition exhibit four); his radiology report was on a form labeled "Radiology Department, Caylor-Nickel Clinic/Hospital", *id.* (plaintiff's deposition exhibit five); and his discharge summary was reported on a form captioned "Caylor-Nickel Clinic and Hospital", *id.* (plaintiff's deposition exhibit three). These forms give the distinct impression that the Clinic and the Hospital were a single entity. Even the Authority's personnel were confused about the separate identities of the Caylor-Nickel facilities as evidenced by their letters to the Creightons' attorney. *Id.* at 137, 140. While we do not suggest that the Hospital intentionally attempted to confuse the Creightons or the Authority, the close identity of interest between the Hospital and the Clinic is a factor in our resolution of the relation back problem in this case. *See* 6. C. Wright & A. Miller, Federal Practice and Procedure § 1499 (1971); *Clark v. Southern Ry. Co.* (D.C.Ill. 1980) 87 F.R.D. 356.

It is true that the Hospital did not receive actual notice of the claim within the period of the statute of limitations, but T.R. 15(C) does not require actual receipt of notice within the statute of limitations to warrant relation back. Rather, it requires only that "within the period provided by law for commencing the action against him, the party to be brought in by amendment: (1) has received *such notice* of the institution of the action against him that he will not be prejudiced in maintaining his defense *on the merits* ...." T.R. 15(C) (emphasis supplied).

Here, the Hospital received constructive notice of the claim *within the period provided by law for commencing the action,* i.e., on February 19, five days before the time expired. This conclusion is based on the fact that the Authority is the agent of all registered health care providers for receipt of notice of claims. IC 16–9.5–9–1 provides:

"Provision is made for the establishment of medical review panels to review all proposed malpractice complaints against health care providers covered by this article.

The filing of a proposed complaint tolls the applicable statute of limitations to and including a period of ninety (90) days following the receipt of the opinion of the medical review panel by the claimant. *A proposed complaint under this chapter shall be deemed filed when a copy of the proposed complaint is delivered or mailed by registered or certified mail to the Commissioner,* who shall within ten (10) days after receipt forward by registered or certified mail a copy to each health care provider named as a defendant at his last and usual place of residence or his office."

(emphasis supplied).

Thus, the claimant's only duty is to file a proposed complaint. The claimant has no

duty to serve the named defendant with notice of the claim. That responsibility, a ministerial act, rests on the Authority, the health care provider's agent for receipt of notice. Here, although the Creightons' original proposed complaint mistakenly named the wrong Caylor-Nickel facility, the Hospital actually received notice of the claim when its risk manager, Lockwood, received the copy of the complaint forwarded to the Clinic by the Authority on February 22. As such, this case is clearly distinguishable on its facts from the situation discussed in *Czarnecki v. Lear Siegler, Inc.* (1984), Ind., 471 N.E.2d 299. In that case, the defendants to be brought in by amendment received *no service or other notice* of the original complaint initiating the action. In fact, they received their *first notice* of the claim only upon the filing of the amended complaint, more than three years after the original complaint was filed and more than five years after Czarnecki was injured. In contrast, the Hospital actually received a copy of the original complaint only nine days after it was timely filed and only four days after the statute would have run. Moreover, Lockwood immediately knew that, but for the mistake, the claim would have been brought against the Hospital. Consequently, the Hospital received actual, formal, seasonable notice and must be deemed to have received constructive notice of the claim against it on the day the action was commenced by filing the original proposed complaint with the Authority, the Hospital's agent for receipt of notice.

█ We think a defendant to be brought in by amendment has received "such notice" as is required by the rule when, as in this case, he has received constructive notice of the claim within the period provided by law and has, thereafter, received actual, formal, seasonable notice of the claim and knew or should have known that "but for a mistake concerning the identity of the proper party, the action would have been brought against him." T.R. 15(C). As indicated, it is our conclusion that the Hospital received such constructive notice. Our conclusion is consistent with and follows

from the prior statements of our supreme court on the subject. In *Czarnecki, supra* at 300, our supreme court stated:

"The key is notice to the party sought to be made a defendant. In *State ex rel. Young v. Noble Circuit Court* (1975), 263 Ind. 353, 332 N.E.2d 99 this Court recognized that the proper primary purpose of a statute of limitations is to insure that parties are given formal and seasonal notice that a claim is being asserted against them. That principle is exactly what Ind.R.T.P. 15(C) is designed to uphold."

In the *Young* decision, our supreme court recognized the relevance of federal decisions construing rule 15(c) of the Federal Rules of Procedure and stated: "A review of a substantial body of federal case law indicates a liberal interpretation of the change of party provision of F.R.C.P. 15(c)." *Young, supra* at 359, 332 N.E.2d 102 (citations omitted). In this regard, our supreme court observed that an extensive review of decisions involving FED.R.CIV.P. 15(c) had been made in *Meredith v. United Airlines* (S.D.Cal.1966) 41 F.R.D. 34, 41 and quoted with approval the *Meredith* court's conclusion that: " 'all of them rest on essential considerations of fairness and represent holdings that a new defendant may be brought into the case after the statute has run against him, if under all of the circumstances it it [sic] fair to do so.' " *Young, supra,* 263 Ind. at 359, 332 N.E.2d at 103.

"Essential considerations of fairness" demand that the Creightons' amended complaint be allowed to relate back to the date of the timely filing of the original complaint because under all the circumstances it is fair to do so. As we have said, the Hospital did actually receive formal, seasonable notice of the original complaint within nine days of its having been filed and only four days after the statute would have run to bar the claim against the Hospital. Moreover, the Hospital immediately knew upon receipt of the original proposed complaint that the action should have been brought against it. The insignificant delay

in the receipt of actual notice is not attributable to the Creightons and should not bar their claim. *See Slater v. Stoffel* (1966), 140 Ind.App. 131, 221 N.E.2d 688, *trans. denied.* Finally, the Hospital's ability to maintain a defense on the merits was not prejudiced as a result of the four-day delay in the receipt of actual notice.

 In the interest of clarity we address the Creightons' contention that there is a genuine issue of material fact on the prejudice question. We see no such issue of fact; as a matter of law, no prejudice appears in the record. Our examination of the record reveals that this question can be completely resolved because the relevant, undisputed facts lead to but a single inference: the Hospital will suffer no prejudice in its ability to maintain a defense on the merits by allowing the Creightons' amended complaint to relate back. Lockwood's deposition establishes that he investigated the circumstances of Robert's fall within a few days after the incident, *record* at 154 (p. 6), and that he submitted a report of his investigation to the Hospital's insurer, *id.* (p. 11). Thus, it is undisputed that the Hospital knew about the incident and the nature and extent of Robert's injuries shortly after his fall. In addition, there is not the slightest bit of evidence in the record or any inference that the Hospital suffered any diminution in its ability to defend as a result of the insignificant delay in the receipt of notice experienced in this case. Apparently the Hospital did defend the case on its merits before the medical review panel and was prepared to defend on the merits in the trial court until it discovered that the amended complaint had been back dated by the Authority. Thereupon, it was permitted to amend its answer to raise the statute of limitations defense. Even then, the Hospital did not argue prejudice before the trial court; nor has it directed us to any fact in the record that would support a finding of prejudice. Therefore, the only inference that can be drawn from the evidence before the trial court is that the Hospital will not be prejudiced by allowing the Creightons' amended

complaint to relate back to the date the original complaint was filed.

Reversed and remanded for proceedings consistent herewith.

SHIELDS, J. concurs.

SULLIVAN, J. concurs in result.