**Charles R. DUTTON, Appellant (Plaintiff Below),**

v.

**INTERNATIONAL HARVESTER COMPANY and Hoefling Truck and Tractor, Inc., Appellees (Defendants Below).**

No. 28A04-8601-CV-16.

Court of Appeals of Indiana, Fourth District.

Feb. 25, 1987.
Rehearing Denied April 13, 1987.

---

Keith L. Johnson, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, Vosloh & Vosloh, Bloomfield, for appellant.

Michael R. Conner, Richard A. Cohen, Barnes & Thornburg, Indianapolis, for appellee Intern. Harvester Co.

CONOVER, Presiding Judge.

Plaintiff-Appellant Charles R. Dutton (Dutton) appeals the trial court's summary judgment ruling in favor of International Harvester Company (Harvester) in an action for breach of warranty, strict liability and fraud.

We affirm.

ISSUES

Dutton presents eight issues for review which we have consolidated,

1. whether Hoefling Truck and Tractor, Inc. (Hoefling) is an agent of Harvester;

2. whether Harvester breached implied warranties entitling Dutton to incidental and consequential damages;

3. whether Dutton incurred property damage as a result of a defective planter so as to entitle him to invoke strict liability against Harvester;

4. whether the trial court erred in dismissing Dutton's fraud complaint and amended fraud complaint for failure to state with particularity the alleged fraud as required by Trial Rule 9(B).

FACTS

The facts most favorable to appellant are:

Dutton purchased a Model 800 planter from Hoefling on April 1, 1981. Hoefling is a franchise dealer for Harvester pursuant to a Dealer Sales Agreement for Agricultural Equipment (Agreement). Hoefling purchases equipment from Harvester for resale to purchasers. The Agreement specifically provides Hoefling is not an agent of Harvester.

After purchase, the planter did not work properly and various warranty work was performed by Hoefling. Subsequently, Harvester extended its warranty for an additional year to cover two full planting seasons.

After continuing problems with the planter, Dutton rescinded his contract with Harvester and Hoefling and returned the planter to Hoefling. Dutton then filed suit to recover for damages caused by the planter. Dutton claimed damages for rental of a replacement planter, lost profits from a 33 percent reduced corn yield and other expenses for lost time and wasted fertilizer.

Harvester filed a motion for summary judgment. The court granted the motion and also dismissed Dutton's fraud complaint for lack of specificity. Within ten days Dutton filed an amended complaint for fraud. This complaint was also dismissed.

Dutton appeals.

DISCUSSION AND DECISION

I. Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Creighton v. Caylor-Nickel Hospital, Inc. (1985), Ind.App., 484 N.E.2d 1303, 1305–1306. The burden is upon the moving party in a summary judgment motion to establish the lack of a genuine issue of material fact. Ancich v. Mobil Oil Corp. (1981), Ind.App., 422 N.E.2d 1320, 1322.

When reviewing the grant of a motion for summary judgment, we stand in the shoes of the trial court. Lafary v. Lafary (1985), Ind.App., 476 N.E.2d 155, 158. We must liberally construe all evidence in favor of the nonmovant and resolve any doubts as to the existence of a genuine issue against the proponent of the motion. Kahf v. Charleston South Apartments (1984), Ind.App., 461 N.E.2d 723, 729. Even if the facts are not in dispute, summary judgment is not appropriate if conflicting inferences arise from the facts. Board of Aviation Commissioners of St.

*Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

■ Summary judgment may not be used as a substitute for trial to resolve factual disputes. Even if the trial court believes the nonmoving party will not be successful at trial, summary judgment should not be entered where material facts conflict or conflicting inferences are possible from undisputed facts. *Grimm v. Borkholder* (1983), Ind.App., 454 N.E.2d 84, 86.

## II. *Incidental & Consequential Damages*

Dutton contends he is entitled to incidental and consequential damages as a result of Harvester's breach of warranty. We disagree.

■ The amount recoverable for breach of warranty is usually the difference between the value of the goods accepted and the value of the goods had they been conforming. IC 26–1–2–715. Dutton does not claim this type of damage. Instead, Dutton requests only incidental and consequential damages.

Incidental and consequential damages may be recovered only in certain defined circumstances:

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

IC 26–1–2–715.

■ First, Dutton relies on section 2(a) for the basis of his recovery for incidental and consequential damages. An essential element for the recovery of incidental and consequential damages due to breach of warranty is privity of contract. *Lane v.*

*Barringer* (1980), Ind.App., 407 N.E.2d 1173, 1175.

The rule in Indiana is

Implied warranties of merchantability and fitness for a particular use, as they relate to economic loss from the bargain, cannot then ordinarily be sustained between the buyer and a remote manufacturer. *Gregory v. White Truck & Equipment Co., Inc.* (1975), Ind.App., 323 N.E.2d 280.

*Richards v. Goerg Boat & Motors, Inc.* (1979), 179 Ind.App. 102, 384 N.E.2d 1084, 1092.

Judge Hoffman states the reason for the rule in *Richards, supra,* 384 N.E.2d at 1092

Generally privity extends to the parties to the contract of sale. It relates to the bargained for expectations of the buyer and seller. *Dagley v. Armstrong Rubber Company* (7th Cir.1965), 344 F.2d 245. Accordingly, when the cause of action arises out of economic loss related to the loss of the bargain or profits and consequential damages related thereto, the bargained for expectations of buyer and seller are relevant and privity between them is still required.

Dutton claims Hoefling is an agent of Harvester and therefore there is privity between Dutton and Harvester.

### a. *Agency*

■ Ordinarily agency is a question of fact. *Department of Treasury v. Ice Service, Inc.* (1942), 220 Ind. 64, 41 N.E.2d 201, 202. The agency relationship arises from the consent of the parties but it is not necessary for the contract or authority of the agent to be in writing. *Id.*

Dutton cites the agreement between Harvester and Hoefling as the only proof of the agency relationship.[1] Thus, in this situation whether an agency relationship exists turns on the interpretation of the agreement.

Judge Shields succinctly stated the standard for reviewing whether summary judgment is appropriate in the interpretation of contracts in *Midwestern Indemnity Co. v.*

---

1. Dutton did not allege nor does he argue an apparent agency was present here.

*Leffler Const. Co.* (1984), Ind.App., 463 N.E.2d 1130, 1133:

> The construction of a written contract is generally a question of law for the trial court, not a question of fact. *Kleen Leen, Inc. v. Mylcraine,* (1977), 174 Ind. App. 579, 369 N.E.2d 638 (if there is no ambiguity in terms of contract, then construction of those terms is a matter of law). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the *facts* necessary to construe the contract. *R.R. Donnelley & Sons, Co. v. Henry-Williams, Inc.,* (1981) Ind.App., 422 N.E.2d 353; *Kleen Leen, Inc. v. Mylcraine.* A contract is ambiguous when reasonable persons would find its terms subject to more than one interpretation. *Fort Wayne Cablevision v. Indiana & Michigan Electric,* (1983) Ind.App., 443 N.E.2d 863; *Ethyl Corp. v. Forcum-Lannom Associates,* (1982) Ind.App., 433 N.E.2d 1214; *Indiana Industries.*

Thus, whenever summary judgment is granted based upon the construction of a contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, *Ancich v. Mobil Oil Corp.,* (1981) Ind.App., 422 N.E.2d 1320; *Kleen Leen, Inc. v. Mylcraine,* or that the contract ambiguity, if one exists, can be resolved without the aid of factual determinations. *Ancich; Indiana Broadcasting Corp. v. Star Stations,* (1979) 180 Ind.App. 207, 388 N.E.2d 568.

■ Here, the contract specifies the duties and obligations of the two parties. The contract states Hoefling is not an agent of Harvester and Hoefling has no power to bind Harvester.[2]

Reviewing the agreement between Hoefling and Harvester, the court correctly found no agency relationship was created in this case as a matter of law.

The parts of the franchise agreement cited by Dutton as evidencing an agency relationship do not intrude upon Hoefling's operations so as to create an agency. The agreement calls for financial records to be exchanged to protect Harvester's investments and property in Hoefling's custody. Also, advertising, parts, and service matters are mentioned.

■ The contract is not so intrusive as to interfere with Hoefling's independent operations. Further, the agreement is unambiguous. The trial court correctly interpreted the contract as not creating an agency relationship as a matter of law. Because Hoefling is not an agent of Harvester, no privity of contract existed between Harvester and Dutton. For this reason Dutton's claims for economic loss cannot be sustained.

### b. *Property Damage*

Dutton then claims under IC 26–1–2–715(2)(b) he suffered property damage in the form of reduced crop yields due to the malfunctioning planter. The issue raised by Dutton's claims is whether damage was done to "property."

■ Crops are emblements which are considered personal property. *Sherry et al. v. Picken* (1858), 10 Ind. 285, 286. However, we cannot agree with Dutton's contentions damage was done to emblements.

> EMBLEMENTS. The vegetable chattels called "emblements" are the corn and other growth of the earth which are produced annually, not spontaneously, but by labor and industry, and thence are called *"fructus industriales." Reiff v. Reiff,* 64 Pa. [134] 137....
>
> Emblements are the away-going crop; in other words, the crop which is upon the ground and unreaped when the tenant goes away, his lease having determined; and the right to emblements is the right in the tenant to take away the away-going crop, and for that purpose to

---

2. We note the mere express denial of the existence of an agency relationship is not in itself determinative of the matter. *Drummond v. Hilton Hotel Corp.* (1980), 501 F.Supp. 29, 31. The true test in such a situation is how much control the principal has over the alleged agent and the intent and functioning of the parties. *Oberlin v. Marlin American Corp.* (1979), 596 F.2d 1322, 1326.

come upon the land, and do all other necessary things thereon. *Miller v. Gray,* Tex.Civ.App., 108 S.W.2d 265, 268. Black's Law Dictionary 614 (Rev. 5th ed. 1979).

■ The damage done was in the form of improperly planting the crop. This is not damage to emblements. Instead, the loss is related to labor, not personal or property damage. Therefore, Dutton's property damage claim fails.

### III. *Strict Liability*

Dutton claims Harvester is liable on a theory of strict liability. We disagree.

■ In order for a plaintiff to recover damages from improperly manufactured products under strict liability, personal injury other than economic loss must be proved. *Sanco, Inc. v. Ford Co.* (S.D.Ind. 1984), 479 F.Supp. 895; IC 33–1–1.5–3. Dutton does not dispute this fact.

Dutton does claim his property has been damaged due to the improper functioning of the planter. The pertinent part of Dutton's complaint reads:

> 3. By reason of the defective design and manufacture of the planter and its failure to operate as advertised, represented and warranted by defendants, plaintiff Charles R. Dutton has been greatly damaged in that he incurred expenses for the defective planter and a replacement planter and lost time and profits because of the improper performance of the planter.

(R. 4).

[12] The only loss alleged by Dutton was incidental and consequential damages which is economic in nature. The only loss which could be construed as property damage was in the form of reduced crop yield. As previously stated, reduced crop yield is not property damage because the damage done was not to emblements. (See Section II.b.)

### IV. *Fraud*

Finally, Dutton claims the court erred in dismissing his claims for fraud. The court held Dutton had not specifically alleged the elements of fraud as required by T.R. 9(B). Dutton contends his complaint alleges fraud necessary to meet the requirements of T.R. 9(B). Alternatively, Dutton contends the court should have allowed him to amend his complaint rather than dismissing it. We disagree.

While as a general rule, our rules of procedure require only notice pleading, T.R. 9(B) constitutes an exception to the general rule.

The circumstances constituting fraud include "the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was procurred by fraud." *Wilson v. Palmer* (1983), Ind.App., 452 N.E.2d 426, 428; quoting *Cunningham v. Associates Capital Services Corp.* (1981), Ind.App., 421 N.E.2d 681, 683.

Here, Dutton alleged:

> 4. Defendant International Harvester Company knew that the six-row planter sold to plaintiff was defective, but intentionally, oppressively, and in reckless disregard of plaintiff's rights concealed and misrepresented its knowledge in order to sell the planter to plaintiff and to retain the money paid to them for said planter after plaintiff discovered its defects.

(R. 5).

■ Dutton did not allege the time, place, the substance of the false representations or the facts misrepresented. Dutton failed to meet the T.R. 9(B) standard as outlined in *Wilson.*

Dutton next contends the court erred by dismissing his complaint instead of allowing him to amend it. In *Cunningham v. Associates Capital Services Corp.* (1981), Ind.App., 421 N.E.2d 681, Judge Shields held a complaint deficient under T.R. 9(B) fails to state a claim for which relief can be granted. Thus, under this ruling, the complaint is correctly dismissed. The *Wilson* court reaffirms this result.

Next, Dutton contends the court erred in dismissing his amended complaint. Again, this complaint failed the *Wilson* test for particularity.

Dutton alleged:

4. That on or before April 2, 1981, defendant International Harvester Company knew that the said six-row planter was defective but intentionally, oppressively, and in reckless disregard of plaintiff's interests concealed and misrepresented its knowledge when the planter was sold to plaintiff.

5. That on or before April 2, 1981, defendant International Harvester Company negligently misrepresented the quality of said six-row planter through its agents, servants, employees, and advertisements, which plaintiff relied on to his detriment.

(R. 271).

Again, Dutton fails to state the particulars of the alleged fraud.

The trial court is in all things affirmed.

MILLER, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting

I respectfully dissent.

Contrary to the statement of the majority, Dutton does not claim that Hoefling is the agent of Harvester. Dutton claims only that there is a genuine issue of fact as to whether that relationship exists.

As correctly noted by the majority in footnote 2, the mere provision in the Agreement which purports to disavow an agency relationship is not determinative. If the record reflects any fact which might demonstrate the degree of control essential to an agency relationship, summary judgment as to agency and therefore implied warranty is erroneous. Although Dutton proffered no factual assertion as to actual control, I find demonstration present in Specification 24 of the contract, which at least dilutes the seeming absolutism of the agency disclaimer provision of the same contract.[1] I therefore conclude that it was error for the trial court to determine, solely by reference to the disclaimer provision, that as a matter of law there was not an agency relationship.

Except for sheer surmise, the record contains no showing that Dutton received the usual written provision in sales transactions which purports to limit the manufacturer's warranty to free repairs or replacements for the one-year period (as extended by the subsequent June 25 letter). I, therefore, do not conclude that Harvester has insulated itself against the implied warranties of merchantability and fitness.

It may well be, as contended by Harvester, that a franchise dealer is not always an agent, at least insofar as a franchise agreement creates the relationship. It may also be true, however, that a franchisee in certain instances may be an agent because of the degree of control exercised or exercisable by the manufacturer. In the case before us, we simply do not know. For this reason I need not rely upon rationale such as enunciated by Judge Ratliff dissenting in *Lane v. Barringer* (1980) 1st Dist.Ind. App., 407 N.E.2d 1173, 1176–1178 (privity should not be required between purchaser and manufacturer). In any event, it is my conclusion that the summary judgment was inappropriate with regard to the allegations of implied warranty.

With respect to Dutton's argument that the court erroneously granted summary judgment upon the strict liability theory, I agree with the majority to the extent that Dutton's damage, if any, was not to emblements, i.e., to an otherwise healthy, growing crop. Dutton's damage in this regard

---

1. The agency disclaimer provision of the Agreement is as follows:

    "The Dealer is not the company's agent in any respect and is not authorized to incur any obligations or make any promises or representations on its behalf."

    Specification 24 of the Agreement provides: "24. To ensure that an acceptable quality of dealer performance is maintained, the Company will periodically review with the Dealer the degree to which the Dealer has satisfied the performance and operating requirements established in the agreement. The Dealer agrees to cooperate with the Company by making available to it, at such time as may be mutually convenient for such review, those sales, service and financial records which shall be necessary to adequately analyze the operation of the Dealer's business and by assuring, upon the occasion of such review, the presence of those dealership personnel whose attendance would contribute to the overall value of the review...."

**320**

was indeed occasioned by an alleged inability to properly seed the crop so as to give it opportunity to grow and prosper.

I do not, however, agree that such damage is solely related to a loss of labor. Although perhaps minimal, Dutton has undoubtedly sustained property damage in the loss of the seed, fertilizer, etc. used in attempting to produce a crop which because of product defect had little or no real chance for harvest.

To the extent that such property damage was not fairly within the issues framed and that Dutton did limit his claim to matters of purely economic loss, I do concur in the decision of the majority.

With respect to the fraud allegations made by Dutton, I do not agree that the initial failure to meet the specificity requirements of T.R. 9(B) justified a summary judgment upon the issue. The pleading defect is subject to a dismissal pursuant to T.R. 12(B). However, the defect may be cured by amendment. In the case before us, the proferred amended complaint was not significantly more specific than the original. For this reason I agree that the trial court correctly dismissed the amended complaint. The summary judgment ruling was therefore harmless error.

For all of the foregoing reasons, I would reverse the judgment and remand for further proceedings.