Michael E. REED and Beth
E. Reed, Appellants,

v.

CENTRAL SOYA COMPANY, INC., National By–Products, Inc., and Boyce
Turner d/b/a Turner & Sons AG Service, Appellees.

No. 27S05–9309–CV–1020.

Supreme Court of Indiana.

Sept. 22, 1993.

Mary A. Findling, Price & Barker, Indianapolis, Frank E. Gilkison, Marianne L. Vorhees, Beasley Gilkison Retherford Buckles & Clark, Muncie, for Michael E. Reed and Beth E. Reed.

Randall D. Smith, Jeffrey A. Townsend, Baker & Daniels, Fort Wayne, for Central Soya Co., Inc.

John F. Prescott, Ice Miller Donadio & Ryan, Indianapolis, Brent B. Green, S.P. DeVolder, Gamble & Davis, P.C., Des Moines, IA, for National By–Products, Inc.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

We grant transfer to address the parameters of recovery for property damage under Indiana's Strict Product Liability Act.[1] *Ind. Code Ann.* §§ 33–1–1.5–1 through 33–1–1.5–8 (West 1983 and Supp.1992). Michael E. Reed and Beth E. Reed (Plaintiffs–Appellants below) seek transfer after the Court of Appeals, in a memorandum decision, granted summary judgment in favor of Central Soya, Inc., and National By–Products, Inc. (Defendants–Appellees below) on the Reeds' strict liability claim and

---

[1] This Act has been commonly referred to as the "Product Liability Act" although the legislature gave it no formal title. Because the Act now applies only to product liability actions based on strict liability in tort and not to actions based on negligence, we refer to it here as the "Strict Product Liability Act."

affirmed the trial court's entry of summary judgment in defendants' favor on the Reeds' punitive damage claim. *Reed v. Central Soya* (1991), Ind.App., 581 N.E.2d 467.

### Facts

The Reeds operate a dairy farm under the name of Pinehurst Farm, which is devoted to the breeding of pure-bred dairy cows and to the production of milk. The Reeds claim their dairy cattle were damaged after eating contaminated feed.

National is a rendering company that produces meat and bone meal as a by-product of rendered animals. National sold meat and bone meal, allegedly contaminated with the pesticide Aldrin,[2] to Central Soya. Central Soya is a manufacturer of animal feed which purchases raw ingredients from various sources for use in the animal feed. Among the ingredients incorporated into the feed used by the Reeds was the allegedly contaminated meat and bone meal from National. Central Soya sold the manufactured feed to the Reeds through its distributor, Boyce Turner d/b/a Turner & Sons Ag Service.[3]

In January 1986, the Reeds purchased the contaminated feed. The cows ate it daily from January 8 through January 14, 1986, and from time to time between January 14 and February 20, 1986. The Reeds first observed side effects on January 9. Some cows were sick, nervous and restless; some had upset stomachs, bloody noses, and poor appetites. Milk production was down. The Reeds claim that the tainted feed had a long term effect on the cows: some aborted calves or gave birth to stillborn calves, some would not breed, some could no longer be used to harvest embryos for sale, and some died.

The Reeds sued National and Central Soya for negligence, breach of implied warranty, and strict liability in tort. The Reeds also sought punitive damages. De-

fendants moved for summary judgment. The trial court entered summary judgment for National on the breach of warranty and negligence claims because there was no privity between the Reeds and National. The trial court denied summary judgment to Central Soya on the negligence and strict liability in tort claims. The trial court entered summary judgment for both National and Central Soya on the punitive damage claim because there was no evidence to support that claim. The Reeds' request for reconsideration of the ruling on punitive damages was denied; the judgment was made final pursuant to Indiana Trial Rule 56(C). The Reeds appealed.

The Court of Appeals concluded that the Reeds could not recover compensatory damages under Indiana's Strict Product Liability Act because the damage was not "sudden, major damage to property" as defined in *Ind. Code* § 33–1–1.5–2, and directed the trial court to enter summary judgment in favor of National and Central Soya on the strict liability in tort claim. The court affirmed summary judgment in favor of National on the issue of punitive damages because no claim for compensatory damages remained pending against National. With respect to Central Soya, the Court of Appeals affirmed the denial of summary judgment on the negligence claim. In addition, the court could not determine as a matter of law that there was not clear and convincing evidence to support punitive damages, so summary judgment in favor of Central Soya on the punitive damage claim was reversed.

The Reeds seek transfer and raise the following issues in their petition:

(1) Whether the damage to the dairy cows was recoverable on a theory of strict liability in tort; and

(2) Whether there is a genuine issue of material fact concerning Reeds' entitlement to punitive damages.

---

**2.** Aldrin is the name of a corn insecticide used from 1958 through 1974. In 1974, the Environmental Protection Agency banned the use of Aldrin for domestic agricultural purposes in the United States. When consumed by animals, Aldrin stores in the fatty tissues and is oxidized into dieldrin.

**3.** Turner is not a party to this appeal.

## I. *Standard of Review*

This case was resolved in the court below by summary judgment. Summary judgment is appropriate only if the pleadings and evidence sanctioned by Indiana Trial Rule 56(C) show "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." T.R. 56(C). Once the movant shows entitlement to summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). On appeal, summary judgments, like all trial court judgments, are clothed with the presumption of validity, but the reviewing court faces the same issues that were before the court which granted summary judgment and follows the same process. *Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134, 140. The party appealing from the grant of summary judgment has the burden of persuading the appellate tribunal that the grant of summary judgment was erroneous, but the determination below is "carefully scrutinized to assure that the non-prevailing party is not improperly prevented from having his day in court." *Id.*

## II. *"Property Damage" Under Indiana's Strict Product Liability Act*

The Reeds assert that the damages they sustained are recoverable under the Act. Defendants maintain that the Reeds do not have a valid claim because (1) the feed presented no risk of personal injury; (2) the Reeds suffered only economic damage; or, (3) the damage suffered by the Reeds was gradually-evolving damage to property rather than sudden, major damage.

The Reeds' claim is governed by Indiana's Strict Product Liability Act, which imposes strict liability in tort on one who places into the stream of commerce any product in a defective condition unreasonably dangerous to the property of a user or consumer. *Ind. Code* § 33–1–1.5–3. Prior to passage of the Act, Indiana recognized strict liability in tort as embodied in § 402A of the *Restatement (Second) of Torts* (1965) which imposes liability on manufacturers and sellers for injuries caused by unreasonably dangerous products.[4] *Ayr–Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 93, 300 N.E.2d 335, 340; *Cornette v. Searjeant Metal Prod., Inc.* (1970), 147 Ind.App. 46, 52, 258 N.E.2d 652, 656. Indiana courts justified imposing strict liability in tort on the same basis as the *Restatement, viz.:* the seller has undertaken a special responsibility toward the consuming public; the public has the right to expect sellers to stand behind their products; and public policy demands that the burden of accidents be placed upon those who market products and who can treat that burden as a cost of doing business. *Cornette v. Searjeant,* 147 Ind.App. at 52–3, 258 N.E.2d at 656; *Restatement (Second) of Torts* § 402A cmt. c.

The liability imposed by § 402A is founded on tort, not on contract. As such, strict liability in tort eliminated the need for privity in cases involving defective goods that cause physical harm. *See, e.g., Ayr–Way Stores,* 261 Ind. at 93, 300 N.E.2d at 340; *Cornette,* 147 Ind.App. at 52, 258 N.E.2d at 656. Liability is "strict" because it is imposed on sellers even if they exercise all reasonable care in the manufacture of the product. *Montgomery Ward & Co. v. Gregg* (1990), Ind.App., 554 N.E.2d 1145, 1162. Liability will be attributed to a seller only if the product contains a defective condition rendering it unreasonably dangerous for its intended use. *Conder v. Hull Lift Truck, Inc.* (1982), Ind., 435 N.E.2d 10, 17.

**4.** Section 402A of the Restatement provides: Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

  (a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

  (a) the seller has exercised all possible care in the preparation and sale of his product, and

  (b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

In 1978, the Indiana legislature passed the Strict Product Liability Act, *Ind. Code Ann.* §§ 33–1–1.5–1 through 33–1–1.5–8, and incorporated § 402A nearly verbatim. *Ind. Code Ann.* § 33–1–1.5–3 (West 1983) (amended 1983); *Hoffman v. E.W. Bliss Co.* (1983), Ind., 448 N.E.2d 277, 281. The 1978 Act placed no restriction upon the type of property damage recoverable; the Act allowed recovery for "physical harm" which was defined as "bodily injury, death, loss of services, and rights arising therefrom, *as well as damage to property.*" *Ind. Code Ann.* § 33–1–1.5–2 (West 1983) (amended 1983) (emphasis added). Thus, in the same way that negligent tortfeasors are subject to liability for property damage caused by their negligence, sellers became subject to strict liability in tort for property damage caused by a defective product. The rule in § 402A applied "to products which, if they are defective, may be expected to and *do cause only 'physical harm'* in the form of damage to the user's land or chattels, as in the case of animal food or a herbicide." *Restatement,* § 402A, cmt. d (emphasis added).

In 1983, the legislature made significant changes to the Act. *General Electric Co. v. Drake* (1989), Ind.App., 535 N.E.2d 156, 158. The 1983 Act changed the definition of "physical harm" to read: "bodily injury, death, loss of services, and rights arising from such injuries, *as well as sudden, major damage to property. The term does not include gradually-evolving damage to property or economic losses from such damage.*" *Ind. Code Ann.* § 33–1–1.5–2 (West Supp.1992) (emphasis added).

### A. *Risk of personal injury is not necessary.*

Defendants rely on *Sanco, Inc. v. Ford Motor Co.,* 579 F.Supp. 893 (S.D.Ind. 1984) *aff'd,* 771 F.2d 1081 (7th Cir.1985) and *General Electric Co. v. Drake* (1989), Ind.App., 535 N.E.2d 156, for the proposition that the defect in the product must involve an occurrence of such an immediate and calamitous nature that human life and limb are exposed to a clear and significant danger before recovery is available under the Act. Otherwise, they assert, only contract remedies are available. We do not agree.

Tort law has traditionally allowed recovery for property damage even in the absence of personal injury. *Barnes v. Mac Brown and Co.* (1976), 264 Ind. 227, 230, 342 N.E.2d 619, 621; *Drake,* 535 N.E.2d 156, 160. In fact, a tort action traditionally presupposes that the plaintiff has been exposed to an unreasonable risk of harm to his person *or* property. *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). Moreover, the Act itself contains no requirement of personal injury, but expressly allows recovery for physical harm to property even in the absence of personal injury. *Ind. Code* § 33–1–1.5–2.

Defendants' reliance on *Sanco* is misplaced. *Sanco* involved a fleet of trucks that had been plagued with a number of problems, including nonfunctioning gauges, electrical shorts, and cracking windshields. The purchaser sued in negligence for the cost of repair and lost profits. Defendants point to the statement in the opinion of the district court that "as a general rule, when damage is sudden and calamitous, resulting from an occurrence hazardous to human safety, recovery may be had in tort," 579 F.Supp. at 898, as support for their assertion that tort remedies are available only where personal injuries are alleged. However, *Sanco* involved a claim for economic loss, not property damage, and was decided on that basis. On appeal, the Seventh Circuit also recognized the distinction between a tort recovery for physical injury or property damage, and a contract remedy for economic loss. 771 F.2d at 1085. *Sanco* does not stand for the proposition that one must be exposed to the risk of personal injury to recover on a strict liability in tort theory.

Defendant's reliance on *General Elec. v. Drake,* 535 N.E.2d 156, is similarly misplaced. In *Drake,* the plaintiffs owned rental property which was damaged when an electrical cord caused a fire. They sought recovery for property damage under the Act. The manufacturer argued that plaintiffs could not recover because

they were not exposed to the risk of bodily injury. *Id.* at 159. Defendants here rely on the statement in *Drake* that the only type of property damage recoverable under the Act is "damage to property under circumstances in which the absence of personal injury is merely fortuitous, such as when an object explodes but does not inflict personal injuries on anyone." *Id.* at 159. National fails to note, however, that the *Drake* court also noted that the plain language of the Act permits a consumer to recover for "physical harm" without distinctions between personal injury and property damage. *Id.* at 159.

The Reeds' claim does not fail because they allege only property damage. The Act continues to follow the common law rule that allows a tort recovery for property damage alone.

### B. *Recovery of Economic Damages.*

■ Alternatively, the defendants claim that the loss allegedly suffered by the Reeds was solely economic in nature and that such losses are not recoverable under the Act. Instead, they argue, such damages are more appropriately recovered through contract remedies.

Economic loss is not defined in the Act, but has been defined by Indiana courts as "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Prairie Production, Inc. v. Agchem Div.–Pennwalt Corp.* (1987), Ind.App., 514 N.E.2d 1299, 1304 (addressing whether lost profits are recoverable in negligence actions) quoting Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?* 114 *U.Pa. L.Rev.* 539, 541 (1966). Economic loss includes such incidental and consequential losses as lost profits, rental expense and lost time. *Dutton v. International Harvester Co.* (1987), Ind.App., 504 N.E.2d 313, 318. *See also Babson Bros. Co. v. Tipstar Corp.* (1983), Ind.App., 446 N.E.2d 11, 15; *Richard v. Goerg Boat & Motors, Inc.*

(1979), 179 Ind.App. 102, 112, 384 N.E.2d 1084, 1092.

■ The Act allows recovery for "sudden, major" damage to property, but excludes recovery of "gradually evolving damage to property *or economic losses from such damage.*" *Ind. Code* § 33–1–1.5–2 (emphasis added). Like the court in *Yasuda Fire & Marine Ins. v. Lake Shore Elec. Corp.*, 744 F.Supp. 864, 871 (S.D.Ind. 1990), we find the statute ambiguous: Does the term "economic losses from such damage" refer to "sudden, major damage" or to "gradually evolving damage"? Employing a rule of statutory construction, the court in *Yasuda* correctly held that the term related to "gradually evolving damage" rather than to the more remote "sudden, major damage." *Id.* at 872. Thus, where the damage evolves gradually, one may not recover under the Act either for the gradually evolving property damage or for the economic damages incurred on account of that gradual damage. On the other hand, where one sustains sudden, major damage to property, one may recover economic losses arising out of that damage pursuant to the Act.

Where, however, *only* economic loss is alleged, no recovery is allowed under the Act. This has been the rule in Indiana for some time. For example, in *Dutton v. International Harvester*, 504 N.E.2d 313, plaintiff sought recovery under the Act for lost profits, rental expense, lost time and other expenses resulting from a planter that failed to operate properly. The Court of Appeals affirmed summary judgment in favor of the manufacturer because the only losses alleged were incidental and consequential damages not recoverable under the Act. *Id.* at 318. That purely economic interests, such as deterioration, internal breakage, or other non-accidental causes, are not entitled to protection under strict liability in tort is also the majority view among other states. *W. Page Keeton et al., Prosser and Keeton on the Law of Torts* § 101 (5th ed. 1984).

■ We hold that where the loss is solely economic in nature, as where the only claim of loss relates to the product's failure

to live up to expectations, and in the absence of damage to other property or person, then such losses are more appropriately recovered by contract remedies.

The justifications for adhering to this rule are several. The law of sales set out in Article 2 of the Uniform Commercial Code governs the economic relations between buyer and seller; the dissatisfied buyer may avail himself of those statutory remedies fashioned by the legislature.[5] Allowing a buyer to recover in tort where he has suffered only economic loss allows him to circumvent the seller's effective limitation or exclusion of warranties under the UCC, and subjects manufacturers to liability for damages of unknown and unlimited scope. Clearly, the legislature has determined that economic loss, unaccompanied by property damage, is not recoverable in strict liability in tort. Contract law remains the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function.

The Reeds claim they have suffered the following damages as a result of thirty-eight cows ingesting the feed: reduced milk production, aborted calves, stillborn calves, cows that would not breed, and cows which could not be used to harvest embryos for sale. In short, assert the Reeds, the cows became worthless as breeding stock. As a result, the Reeds claim a decrease in the fair market value of the affected cows. Defendants assert that diminution in the value of cows is economic loss, not property damage.

■ Domestic cattle are regarded as property. *Greives v. Greenwood* (1990), Ind.App., 550 N.E.2d 334, 338. The basic measure of damages for loss of cows is the market value of the animal, if there is a market value, immediately prior to the wrongful act. *Greives*, 550 N.E.2d at 338.

Thus, if the feed caused the decrease in the fair market value of the cows, then they have suffered property damage, rather than mere economic loss. Accordingly, the Reeds claim is not barred because they seek to recover only economic losses.

**C. "Sudden, Major" Damage to Property.**

The *Restatement* and the original 1978 Indiana Strict Product Liability Act would have allowed the Reeds to proceed with their claim for property damage because neither imposed any restrictions on the nature of the property damage sustained. The 1983 amendment to the Act, however, limited recovery for property damage to that which is "sudden and major." *Ind. Code* § 33–1–1.5–2.

■ The words "sudden" and "major" are not defined in the statute and few cases have discussed the meaning of these words in the context of the Act. In our attempt to discern the meaning intended by the legislature, we keep the Act's purpose and scope in mind and give words their common and ordinary meaning without overemphasizing a strict, literal or selective reading. *Indianapolis Convention & Visitors Ass'n. v. Indianapolis Newspapers, Inc.* (1991), Ind., 577 N.E.2d 208, 212. Our duty is to ascertain and give effect to the intent of the legislature. *Dague v. Piper Aircraft* (1981), 275 Ind. 520, 524, 418 N.E.2d 207, 210.

Webster's Third New International Unabridged Dictionary (1976) defines "sudden" as "happening without notice or with very brief notice; coming or occurring unexpectedly." Thus "sudden" contemplates both the elements of time during which the damage occurs, as something marked by abruptness or haste, and the element of surprise in relation to the damage. "Major" is defined as "greater in number or extent, notable or considerable in effect or

**5.** The Uniform Commercial Code, codified in *Ind.Code* §§ 26–1–2–101 through 26–1–2–725, constitutes a comprehensive system for determining rights and duties of buyers and sellers with respect to contracts for the sale of goods. The code provides for express warranties re-

garding the quality of goods, *Ind.Code* § 26–1–2–313, as well as implied warranties of merchantability. *Ind.Code* § 26–1–2–314. The buyer may also recover economic loss. *Ind.Code* § 26–1–2–715.

scope or involving grave risk," which connotes some qualitative relationship, either in number or extent, to the damage. Thus, where recovery for property damage is sought under the Act, such damage must have happened quickly, unexpectedly and have been significant in scope. The question of whether the damage suffered by a plaintiff is sudden, major damage is a question of law, just as the existence of a duty in negligence is a question of law, taking into account such things as the nature of the defect alleged, the type of risk presented and the manner in which the injury arose.

We conclude that this approach is consistent with the intent of the legislature that property damage claims under the Act are of the nature traditionally recoverable on a strict liability theory by eliminating recoveries for damages that otherwise are more appropriate for breach of contract actions. The Act does, for example, exclude from strict liability recoveries damage which manifests itself incrementally over time rather than in a calamitous event.

Our interpretation of this definition is consistent with previously decided Indiana cases. *Mac's Eggs, Inc. v. Rite–Way Agri Dist.*, 656 F.Supp. 720 (N.D.Ind.1986), involved a farmer who sued the manufacturer of poultry cage equipment alleging that defects in the equipment were responsible for killing thousands of chickens over a period of several months. The District Court determined that, as a matter of law, the type of injury alleged by the farmer was not the "sudden sort of calamitous injury to which the [Strict Product Liability Act] applied," but was "more akin to disappointment with the equipment's performance." *Id.* at 732. By comparison, *Yasuda Fire & Marine Ins. v. Lake Shore Elec. Corp.*, 744 F.Supp. 864, involved the malfunction of an electrical switch which resulted in numerous chickens suffocating in a single episode. Defendants moved pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim. The court held that the allegations were sufficient to support "the inference, at the 12(b)(6) stage, that suffo-

cation of chickens is 'sudden' and 'major damage' to property." 744 F.Supp. at 871.

■ Here, the defendants argue that the damage allegedly suffered was not sudden and major because it occurred gradually over a number of years. In support, they point to the Reeds' statement that the claimed losses were still evolving five years after consumption of the tainted feed. They claim that the damage was not major because not every cow was affected.

We agree with defendants that the reaction of the cows to the feed from January 8 through February 20 is not the type of sudden, major damage contemplated by the Act. According to the Reeds, the damage to cows manifested itself incrementally over a period of time; it did not occur in a calamitous event. Thus summary judgment is appropriate on the strict liability claims.

### Punitive Damages

■ Theoretically, punitive damages may be awarded if the Reeds (1) establish a right to compensatory damages in a tort action, *Sullivan v. American Cas. Co.* (1992), Ind., 605 N.E.2d 134, 140, and (2) prove by clear and convincing evidence that the defendant's conduct was "inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362; *Orkin v. Traina* (1986), Ind., 486 N.E.2d 1019, 1023. There is no entitlement to punitive damages. *Travelers*, 442 N.E.2d at 358–65. Whether a party may recover punitive damages is usually a question of fact for the fact finder to decide; *Whitten v. Kentucky Fried Chicken Corp.* (1991), Ind.App., 570 N.E.2d 1353, 1358, but it may be decided as a matter of law.

Having concluded that the Reeds cannot, as a matter of law, recover compensatory damages against National and Central Soya under the Strict Product Liability Act, the Reeds are not entitled to recover puni-

tive damages on those claims. *Sullivan v. American Cas.*, 605 N.E.2d at 140.

■ However, a negligence action remains pending against Central Soya. Along with that action the Reeds asserted a claim for punitive damages. In its initial ruling on the punitive damages issue, the trial court found "a complete lack of evidence in the record" of this cause to support a claim for punitive damages. That original holding was affirmed by the trial court following submission by the Reeds and defendants of additional deposition testimony. Although we find little evidence to suggest that the Reeds would be successful in meeting their burden of proof on their punitive damage claims, we are unable to conclude on the basis of the record before us that as a matter of law there is no genuine issue of material fact left for resolution by the finder of fact. Therefore, summary judgment is not appropriate.

### Conclusion

Accordingly, we grant transfer, and vacate the opinion of the Court of Appeals. This case is remanded to the trial court with instructions to enter summary judgment in favor of National and Central Soya on the strict product liability claim; to enter summary judgment in favor of National on the punitive damage claim; and to reverse summary judgment in favor of Central Soya on the punitive damage claim so far as it relates to the negligence claim.

SHEPARD, C.J., and GIVAN, J., concur.

DICKSON, J., concurs and dissents with separate opinion with which DeBRULER, J., concurs.

DICKSON, Justice, concurring and dissenting.

The majority opinion correctly observes that the definition of "physical harm" in Ind.Code § 33–1–1.5–2 operates to permit strict product liability recovery for sudden, major damage to property, including resulting economic losses, and that it excludes gradually-evolving property damage and its associated economic losses. However, I disagree with the majority's conclusion that the plaintiffs' damage claim falls outside the "sudden, major damage" definition as a matter of law.

The majority notes the plaintiffs' claim that the tainted feed had a long-term effect on the cows but fails to recognize that there was evidence of immediate and substantial harm. Within the first 24 hours after the plaintiffs' 38 cows began eating the contaminated feed, symptoms of substantial illness appeared and the herd's milk production diminished. While consumption of the bad feed did result in delayed effects (aborted or stillborn calves, refusal to breed, etc.), the decrease in the fair market value of the cows as a breeding and dairy herd occurred immediately upon the plaintiffs' discovery that the cows had ingested contaminated feed, thus substantially impairing the cows' normal capacity to produce an adequate amount of milk or to breed in the future.

At a minimum, these facts demonstrate a question of fact precluding summary judgment on the issue of whether all or part of the plaintiffs' claims result from sudden and major damage. There is substantial merit to the argument that, while not entitled to economic losses from gradually-evolving property damage, the plaintiffs are entitled to seek damages from the sudden loss in fair market value upon discovery that their cows had eaten the contaminated feed. Whether property damage is sudden and major should be a matter for determination by a finder of fact, not a question of law for resolution by the court.

While I disagree with the majority's declaration that the issue of sudden, major damage is a question of law, in all other respects I concur.

DeBRULER, J., concurs.